**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISCTRICT OF PENNSYLVANIA**

|                            |   |                          |
|----------------------------|---|--------------------------|
| CAROL TARASOVICH,          | ) |                          |
|                            | ) |                          |
| Plaintiff,                 | ) |                          |
|                            | ) |                          |
| v.                         | ) | Civil Action No. 15-327  |
|                            | ) |                          |
| ERIC KOCSIS, TAMMY WHITFIELD, | ) |                       |
| STEPHANIE STOHON, BLAIRSVILLE- | ) |                      |
| SALTSBURG SCHOOL DISTRICT, and | ) |                      |
| WESSEL AND COMPANY,        | ) |                          |
|                            | ) |                          |
| Defendants.                | ) |                          |
|                            | ) |                          |

## <u>OPINION</u>

**CONTI, Chief U.S. District Judge**

   Carol Tarasovich ("Tarasovich"), the plaintiff in this case and the former elected tax collector for Indiana County, (the "County"), the Borough of Blairsville (the "Borough"), and the Blairsville-Saltsburg School District (the "School District"), brings this action pursuant to 42 U.S.C. § 1983. Tarasovich claims that the County, Borough, and School District, through its representatives and employees, including Wessel and Company ("Wessel"), an accounting firm, fabricated the need to conduct an audit of her books in order to oust her from office, and conducted that audit in a manner that violated her constitutional rights. (ECF No. 54 ¶¶ 15, 68-73.) The audit was initiated on December 12, 2013, when several Wessel employees arrived at Tarasovich's tax collection office and demanded that she close for the day and immediately gather and turn over her records. (ECF No. 54 ¶¶ 67-81.) Two individuals affiliated with the School District joined the Wessel employees at Tarasovich's tax office that day. (<u>Id.</u> ¶¶ 82, 93.)

In the original complaint, Tarasovich alleged that the defendants violated a litany of her constitutional rights, including her rights to privacy, property, procedural due process, and freedom of enterprise, and to be free from illegal searches and arbitrary dismissal from public employment. (ECF No. 1 at 29-33.)  The court dismissed Tarasovich's original complaint in its entirety at an April 6, 2016 hearing, but noted that viable Fourth Amendment claims could possibly be pled based upon the alleged confiscation of her personal tote bag and the alleged uninvited entry into her private residence during the December 12, 2013 audit. (ECF No. 53.) Tarasovich filed an amended complaint on May 23, 2016, in which she asserts a § 1983 conspiracy claim (Count I) and a Monell claim for municipal liability (Count II) stemming from these two Fourth Amendment violations. (ECF No. 54 at 28-36 (the "Amended Complaint").)

All defendants moved to dismiss the Amended Complaint. (ECF Nos. 57, 59, 61, 63.)  At an August 30, 2016 hearing, the court granted the Borough's (ECF No. 59) and the County's (ECF No. 61) motions to dismiss, finding that no facts were pled connecting these entities or their employees to the two Fourth Amendment violations asserted in the Amended Complaint. (ECF No. 85 at 13-14, 17-18, 29, 32.)  The court ruled at that hearing that the allegations concerning the confiscation of Tarasovich's tote bag could proceed against Stephanie Stohon ("Stohon"), a Wessel employee who initiated the audit at Tarasovich's office on December 12, 2013, and against Tammy Whitfield ("Whitfield") and Eric Kocsis ("Kocsis"), the School District employees who were present at Tarasovich's office with Stohon because the Amended Complaint included facts indicating that the three individuals acted together with respect to taking that bag out of Tarasovich's tax office. (ECF No. 85 at 8-9, 11, 17, 20, 29.) The court ordered additional briefing with respect to a) the viability of the Fourth Amendment claim to the extent it was based upon Stohon's alleged illegal entry into Tarasovich's home on

December 12, 2013, and b) whether Wessel or the School District could be held liable for the acts of its employees. (ECF No. 85 at 18-23, 32-33.)

The supplemental briefing was filed, and the court is prepared to rule on the issues that remained open at the end of the August hearing. (ECF Nos. 80-83.) The court requires no further oral argument about the pending motions to dismiss. The court writes for the parties and assumes that the reader is familiar with the proceedings held before this court on April 6, and August 30, 2016, the transcripts of which are available on the docket. (ECF Nos. 53, 85.) For the reasons set forth herein, sufficient facts have been pled to plausibly infer that Stohon's entry into Tarasovich's home was part of and in furtherance of the alleged conspiracy among Stohon, Whitfield, and Kocsis to execute the audit in a manner that would violate Tarasovich's Constitutional rights. There are sufficient facts pled to support a reasonable inference that Stohon entered into Tarasovich's home at the direction of, with the encouragement of, jointly, or in concert with Whitfield and Kocsis. No facts are pled, however, that would raise any basis upon which to impose liability directly upon Wessel or the School District for the conduct of its employees under the circumstances of this case.

Wessel's (ECF No. 63) and the School District's (ECF No. 57) motions to dismiss are therefore granted as to Count II, and denied as to Count I. The court will conduct a scheduling conference on November 21, 2016 at 3:00 p.m. to set deadlines for the completion of discovery, and related matters.

## I.     Motion to Dismiss Standard

The Court of Appeals for the Third Circuit recently reiterated the standards and procedures that a district court must apply when deciding a motion to dismiss made pursuant to Rule 12(b)(6):

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," Twombly, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.
>
> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Connelly v. Lane Const. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016).

At the final step of the analysis, the court is to assume all well-pled allegations of "historical fact" to be true, construe those allegations in the light most favorable to the plaintiff, draw all reasonable inferences from the facts in favor of plaintiff, and ask whether those facts "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. Id. at 789. Allegations of historical fact are assumed to be true even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful." Id. at 789-90 (citing Iqbal, 556 U.S. at 681). "Put another way, Twombly and Iqbal expressly declined to exclude even outlandish allegations from a presumption of truth except to the extent they resembled a 'formulaic recitation of the elements of a ... claim' or other legal conclusion." Id. at 789.

## II.   Count I: The § 1983 Claim

The court ruled at the August 30, 2016 hearing that sufficient facts were pled in the Amended Complaint to demonstrate concerted action between Stohon, Whitfield, and Kocsis with respect to the confiscation of Tarasovich's personal tote bag. (ECF No. 54 ¶¶ 82, 93, 99-104, 105-09; ECF No. 85 at 7-9, 11, 17, 20, 29.) The court, however, noting that the Amended Complaint alleged that Stohon appeared at the door of Tarasovich's personal residence with only another Wessel employee when forcible entry was allegedly made, deferred ruling on whether a claim was adequately pled with respect to this aspect of the § 1983 claim. (ECF No. 85 at 4, 8, 9, 12, 15.) For the reasons set forth below, the court finds that Count I, to the extent pled against Whitfield, Kocsis, and Stohon, survives dismissal with respect to both alleged Fourth Amendment violations.

## A. **Legal Principles**

Section 1983 imposes civil liability upon any person who, while acting under color of state law, deprives another individual of rights, privileges, and immunities secured by the Constitution or federal law. <u>Doe v. Delie</u>, 257 F.3d 309, 314 (3d Cir. 2011). To prevail on a claim brought pursuant to § 1983, a plaintiff must show that (1) the defendant acted under color of law, and (2) the defendant's actions deprived the plaintiff of rights secured by the Constitution or federal statutes. <u>Anderson v. Davila</u>, 125 F.3d 148, 159 (3d Cir. 1997). An action "under color of law" is the equivalent of "state action" under the Fourteenth Amendment. <u>Leshko v. Servis</u>, 423 F.3d 337, 339 (3d Cir. 2005). Thus, to state a claim of liability under § 1983, a plaintiff must allege that she was deprived of a federal Constitutional or statutory right by a state actor. <u>Id.</u>

Private parties act "under color of law" if they conspire with a state actor to violate an individual's federal rights or jointly engage in prohibited activity with a state official. <u>Dennis v. Sparks</u>, 449 U.S. 24, 27-28 (1980); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970). Once a conspiracy is established, coconspirators can be held responsible for acts performed by members of the conspiracy that are in furtherance of the conspiracy. <u>Zenquis v. City of Phila.</u>, 861 F.Supp.2d 522, 528 n.5 (E.D. Pa. 2012) (citing decisions).

Even without proof of a conspiracy, however, a private individual may be deemed a state actor if there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself." <u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295 (2001) (quoting <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 351 (1974)); <u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009). State action can exist when the state encourages or provides significant aid to a private individual's

unconstitutional activity, or acts in concert with, controls, or jointly participates with the private individual with respect it his unconstitutional activity. Leshko, 423 F.3d at 340 (citing decisions); Angelico v. Lehigh Valley Hospital, Inc., 184 F.3d 268, 277 (3d Cir. 1999) (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 930 (1982)); McKeesport Hosp. v. The Accreditation Council for Graduate Med. Educ., 24 F.3d 519, 524 (3d Cir. 1994). A private individual or entity can also be deemed a state actor where it is delegated a function traditionally and exclusively reserved to the state. Leshko, 423 F.3d at 340 (citing decisions); McKeesport Hosp., 24 F.3d at 524.

**B.  Discussion**

Wessel argues in its supplemental brief that its contractual relationship with the School District to perform the audit, a nonessential function for a school district, cannot transform Stohon's conduct into actions taken under color of law. (ECF No. 81 at 3-6.) Tarasovich does not disagree, as a general matter, with these general principles of law, but contends that the Amended Complaint sufficiently pleads a conspiracy, and in any event, sets forth facts establishing coordinated and joint action between Stohon, Whitfield, and Kocsis with respect to the manner in which the audit was initiated on December 12, 2013, thereby cloaking Stohon's home intrusion with the "authority of state law," and rendering all three defendants responsible for the alleged Fourth Amendment violation. (ECF No. 82 at 3-6.)

As an initial matter, the court cannot rely upon the deposition testimony cited by Tarasovich in her supplemental reply brief at the motion to dismiss stage. (ECF No. 82 at 4.) The court, nevertheless, concludes that, although it is a close call, Tarasovich pled sufficient facts that reflect conspiratorial, or at least concerted and coordinated, conduct between Stohon, Kocsis, and Whitfield in order to state a plausible Fourth Amendment claim based upon Stohon's

alleged intrusion into Tarasovich's private residence.  In reaching this conclusion, the court is cognizant that it must accept as true all allegations in the complaint and make all  reasonable inferences from those facts in the light most favorable to the plaintiff. Millhouse v. Samuals, No. 15-1644, 2015 WL 5954604, at *2 (M.D. Pa. Oct. 13, 2015).

As an initial matter, if Whitfield, Kocsis, and Stohon entered into a conspiracy to violate Tarasovich's Fourth Amendment rights, all three individuals would be liable for any acts taken in furtherance of that conspiracy. Zenquis, 861 F.Supp.2d at 528 n.5.  If there was a conspiracy, Stohon would be deemed to have acted under color of law when she intruded into Tarasovich's private residence, and Whitfield and Kocsis would be responsible for her misconduct, even if they did not specifically direct Stohon to engage in that behavior.  At the motion to dismiss stage, this court cannot decide whether such a conspiracy actually existed. The question at the motion to dismiss stage is whether sufficient facts are pled which, when presumed to be true, state a plausible conspiracy claim.

At the August 30, 2016 hearing, this court concluded that sufficient facts were pled to support a plausible conspiracy claim with respect to the confiscation of Tarasovich's personal tote bag. (ECF No. 85 at 7-9, 11, 17, 20, 29.)  That tote bag was seized immediately after Tarasovich returned to her office after the lunch hour.  During the lunch hour, Stohon appeared at Tarasovich's private residence in order to continue her initiation of the audit, and allegedly forced her way into the home.  The Amended Complaint indicates that Whitfield and Kocsis were present on the day of the audit, even though no official reason for their presence has been identified.  The Amended Complaint includes several allegations reflecting that Kocsis and Whitfield directed, or at least coordinated, Stohon's seizure of items during the audit. (ECF No. 54 ¶¶ 92-109.)  Although these allegations are specific to the confiscation of Tarasovich's

personal tote bag, it is a plausible inference that the purported conspiratorial agreement to seize items without regard to Tarasovich's Fourth Amendment rights from her tax office also encompassed an agreement to seize items from Tarasovich's private residence in the same manner.

This inference arises from the closeness in time between the two events. The Amended Complaint alleges that Kocsis arrived at Tarasovich's tax office as Tarasovich was leaving to walk across the street to her home for the lunch hour and that Whitfield was there when Tarasovich returned to her tax office after the lunch hour. (ECF No. 54 ¶¶ 82, 93.) Tarasovich contends that Stohon intruded into her private residence during the lunch hour, when Kocsis was known to be with Stohon at Tarasovich's office, and Whitfield possibly was already with her as well. (Id. ¶¶ 81, 84-92.) Although Tarasovich alleges that Stohon conducted the audit in an aggressive manner before Kocsis and Whitfield arrived, including demanding that the office be closed and threatening to "embarrass" her in front of her neighbors, no alleged Fourth Amendment violations occurred until after these two officials arrived. (Id. ¶¶ 67-82, 84-88, 93, 101-09.) This court ruled at the August 30, 2016 hearing that the Amended Complaint pled sufficient facts that Kocsis, Whitfield, and Stohon engaged in conduct indicative of a conspiratorial agreement after the lunch hour with respect to the confiscation of Tarasovich's personal tote bag. (ECF No. 54 ¶¶ 92-109; ECF No. 18-19.) The alleged home intrusion occurred during the lunch hour and immediately before the tote bag confiscation. Given the closeness in time of these two incidents, it is reasonable to infer at this stage of the proceedings that Kocsis and Whitfield similarly coordinated with Stohon about visiting Tarasovich's home in order to advance the audit during the lunch hour. (Id. ¶¶ 210-11.)

The Amended Complaint includes no specific allegations about the circumstances under which Stohon was dispatched to Tarasovich's private residence; there are specific allegations with respect to the confiscation of the tote bag. Tarasovich, however, was not in her office during the lunch hour; she was inside her private residence. She could not know what Stohon and Kocsis, and perhaps Whitfield, discussed during the lunch hour about Stohon's visit to her private residence at that time. In any event, direct evidence of a conspiracy is rarely available and the existence of a conspiracy must usually be inferred from the circumstances. Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009). Here, the School District officials' unexplained participation in the audit, the fact that no Fourth Amendment violations are alleged to have occurred before these officials arrived, the known coordination of the confiscation of Tarasovich's tote bag, and the closeness in time between that alleged Constitutional violation and the alleged home instruction are sufficient circumstantial evidence to avoid dismissal of the Amended Complaint.

Even if the above facts do not rise to the level of stating a plausible conspiracy claim, they would nevertheless support an inference that Whitfield and Kocsis "compel[led], influence[d], or encourage[d]" Stohon's intrusion into Tarasovich's private residence, as opposed to only approving or acquiescing in it, in which case Stohon's conduct could be deemed state action and Whitefield and Kocsis could be jointly liable for any resulting Constitutional violations. Glunk v. Noone, No. 15-5565, 2016 WL 2866173, at *3-4 (E.D. Pa. May 16, 2016) (citing decisions). If the three individuals decided jointly that Stohon should visit Tarasovich's home, and gain entry by force if necessary, Stohon's conduct could be deemed state action. Adickes, 398 U.S. at 152; Dennis, 449 U.S. at 27-28; Angelico, 184 F.3d at 277; McKeesport Hosp., 24 F.3d at 524. These factual questions surrounding Stohn's decision to walk across the

street to Tarasovich's home, and to enter it uninvited, cannot be decided at the pleading stage. For present purposes, the court concludes that sufficient facts are pled that permit a reasonable inference of coordinated action between Stohon, Whitfield, and Kocsis while present at Tarasovich's office on December 12, 2013 to state a plausible claim for relief based upon Stohon's alleged instruction into Tarasovich's private residence. Count I, therefore, survives dismissal to the extent that it is pled against Stohon, Whitfield, and Kocsis.

## II.  <u>Count II:  *Monell* Claim</u>

Having ruled that a viable Fourth Amendment claim is pled against employees of the School District and Wessel, the court must assess whether Tarasovich's complaint adequately pleads a basis upon which to impose liability directly against either entity. For the reasons set forth below, the court concludes that Tarasovich did not plead any plausible basis upon which to hold the School District or Wessel responsible for the conduct of its employees. For the reasons set forth below, the court finds that Count II must be dismissed.

### A.  Legal Principles

"[M]unicipalities and other local government units [are] ... persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). A municipality cannot, however, be held liable under § 1983 on a *respondeat superior* theory. Id. at 691 ("[A] municipality cannot be held liable [under § 1983] *solely* because it employs a tortfeasor." (emphasis in original)); Connick v. Thompson, 563 U.S. 51, 60 (2011) ("[L]ocal governments are responsible only for 'their *own* illegal acts.'" (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original))).

In <u>Monell</u>, the Supreme Court held that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694; <u>see</u> <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 657 (3d Cir. 2009). Under the "policy" path, a local government unit may be "sued directly if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121 (1988) (quoting <u>Monell</u>, 436 U.S. at 690). In addition, "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting <u>Pembaur</u>, 475 U.S. at 481). Under the "custom" path, § 1983 authorizes suit "'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the [government] body's official decisionmaking channels.'" <u>Praprotnik</u>, 485 U.S. at 121 (quoting <u>Monell</u>, 436 U.S. at 690–91). "A course of conduct is considered ... a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." <u>Andrews</u>, 895 F.2d at 1480 (quoting <u>Monell</u>, 436 U.S. at 690).

"Just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." <u>Luck v. Mount Airy No. 1, LLC</u>, 901 F. Supp. 2d 547, 564 (M.D. Pa. 2012) (citing <u>Regelman v. Weber</u>, No. 10–675, 2011 WL 1085685, at *5 (W.D. Pa. Mar. 21, 2011)); <u>see</u> <u>Borrell v. Bloomsburg Univ.</u>, 63 F.Supp.3d 418, 451-52 (M.D. Pa. 2014); <u>Smith v. Merline</u>, 719 F.Supp.2d 438, 448-49

(D.N.J. 2010); <u>Victory Outreach Center v. Melso</u>, 371 F.Supp.2d 642, 646 (E.D. Pa. 2004).

Although Tarasovich disagrees, theoretically, with the extension of <u>Monell</u> to private companies, she recognizes that the case law universally extends <u>Monell</u> in this manner, and cites to no legal authority that refuses to do so. (ECF No. 82 at 6-7.)  This court, therefore, applies the principles set forth in <u>Monell</u> to both the School District and to Wessel for purposes of deciding the pending motions to dismiss.

### B. <u>Policy or Custom</u>

Although Tarasovich recites the principle in her Amended Complaint that <u>Monell</u> liability can attach if an official policy or an established custom caused a constitutional violation, she makes no specific allegations identifying any policy or custom of the School District or Wessel that caused the instant alleged Fourth Amendment violations.  Notably, Tarasovich does not argue in either of her supplemental reply briefs that <u>Monell</u> liability should attach under an official policy or custom theory. (ECF Nos. 82-83.)

Upon independent review, the court locates no factual allegations that would support the imposition of <u>Monell</u> liability on this basis.  The Amended Complaint does include an allegation that the School District "engaged in similar actions" that caused a former tax collector to resign. (ECF No. 54 ¶¶ 230-31.)  There are no facts alleged, however, about what these "similar actions" were, and no basis on which to infer that the "similar actions" involved violating that former tax collector's Fourth Amendment rights.  These allegations are, therefore, insufficient to support an inference that the School District had an official policy or established custom or practice of violating employees' Fourth Amendment rights while conducting audits or similar investigations.

The Amended Complaint is devoid of any allegations that Wessel had policies or customs with respect to violating Constitutional rights while conducting audits.

The Amended Complaint provides no basis upon which to infer that either the School District or Wessel could be liable for the asserted Fourth Amendment violations on the ground that either one had an official policy or established custom of conducted audits in a manner that violated individuals' Fourth Amendment rights.

### C.  **Final Policymaker**

Tarasovich contends that Whitfield is a final policymaker for the School District, and that she, in turn, delegated her final policymaking authority to Kocsis with respect to the audit of Tarasovich, thereby making the School District liable for both her and Kocsis's Constitutional violations. (ECF No.83 at 3-6.)  Tarasovich also asserts in her supplemental reply brief that Wessel "would qualify as one of the final policymakers." (ECF No. 82 at 7.)  The court assesses each of these arguments below, but concludes that none supports imposing liability upon the School District or Wessel for the alleged misconduct of Kocsis, Whitfield, or Stohon.

#### 1.  **The School District**

"In order to ascertain who is a policymaker a court must determine which official had final, unreviewable discretion to make a decision or take action." McGreevy v. Stroup, 413 F.3d 359, 369 (3d Cir. 2005).  The pertinent question in this case is not who had authority to call for an audit of Tarasovich's tax records.  There is no dispute that under Pennsylvania law, the School Board has the power to direct that an audit be conducted of Tarasovich's records. 72 P.S. § 5511.26(b).  The pertinent question is who had the authority to mandate the manner and means of executing that audit.  Tarasovich contends that Whitfield had that final policymaking authority because she was the superintendent of schools.  The Amended Complaint includes no factual

allegations or legal support for the contention that Whitfield had such final policymaking authority by virtue of her status as superintendent. (ECF No. 54 ¶¶ 3, 227, 229, 233.)

As an initial matter, Tarasovich's contention is contrary to Pennsylvania statutory law. Directing the manner and means of conducting audits is not listed among the duties of superintendents. The statute proscribing the duties of superintendents instead focuses on managing the methods of instruction and courses of study throughout a school district. 24 P.S. § 10-1081. Although that statute provides that the School Board may assign other duties to a superintendent, there are no allegations in the Amended Complaint indicating that when the School Board authorized the audit of Tarasovich it placed Whitfield in charge of its execution. Tarasovich's conclusory argument, in her supplemental reply brief, that the School Board must have delegated the authority to "speak and act for the municipality" to Whitfield is wholly without supporting facts in the Amended Complaint. (ECF No. 83 at 7.) Tarasovich identifies no Pennsylvania statute that vests authority over the execution of tax audits in school superintendents.

The legal decisions relied upon by Tarasovich do not support her argument that superintendents are final policymakers with respect to the execution of financial audits. The decisions, instead, reflect that a court must assess the duties assigned to a superintendent by statute, by custom and practice of the school district, and by direct order of the school board in determining whether a superintendent is a final policymaker with respect to a particular issue. By way of example, in Jones v. Indiana Area School District, 397 F.Supp.2d 628, 656-57 (W.D. Pa. 2005), the parties conceded that the superintendent was the final policymaker with respect to the transfer of employees because it was customary for the superintendent to request such transfers in that school district. In McGreevy v. Stroup, 413 F.3d 359, 368-69 (3d Cir. 2005), the

superintendent was deemed a final policymaker with respect to the rating of teachers because a state statute delegated that duty to the superintendent.

Although the district court reached a seemingly broad holding that school superintendents are final policymakers because they are the "chief executive officers" of school districts in <u>Sciotta v. Marple Newtown School District</u>, 81 F.Supp.2d 559, 575 & n.17 (E.D. Pa. 1999), upon examination that decision does not advance Tarasovich's claims. The court made this statement about school superintendents in the context of considering a state-created danger theory of municipal liability. <u>Id.</u> at 573-76. In particular, the court was assessing whether school officials were aware of the practices and traditions of the wrestling team such that they could been deemed official school district customs. The state-created danger theory is not at issue in the instant case. Putting aside this significant distinction, the court's statement in <u>Sciotta</u> lacks any legal analysis. Instead, the court acknowledged that Pennsylvania law vested school boards with exclusive authority over the operation of school athletic departments, yet then made the conclusory statement that superintendents could also be final policymakers. <u>Id.</u> at 575 & n.17. The court's conclusion in <u>Sciotta</u> is perfunctory. Finally, and most importantly, when the court did consider whether the school district could be held liable under a <u>Monell</u>-based policy, practice, or custom theory, the court explicitly noted that a different legal analysis was involved than had been applied to the state-created danger theory, and held that there was no basis upon which to permit the case to proceed against the school district on this <u>Monell</u> theory. <u>Id.</u> at 576.

Even under the legal authority upon which Tarasovich relies, because she failed to plead the source of Whitfield's alleged unfettered authority to direct the manner and means of conducting the audit, the court is unable to reasonably infer that the School District can be directly liable for her, and in turn, Kocsis' conduct.

## 2. Wessel

Tarasovich argues in her supplemental reply brief that Wessel is a final policymaker with respect to conducting audits for the School District, and delegated its final policymaking authority to Stohon. (ECF No. 82 at 7.) Tarasovich's argument is both illogical and conclusory. First, the final policymaker model would impute liability to Wessel if Stohon was deemed to have final, unreviewable authority over the execution of the audit. Tarasovich, however, contends that Wessel was the final policymaker, but delegated its authority to Stohon, thus making Wessel liable for Stohon's violations of Tarasovich's Constitutional rights. Tarasovich's contention that Wessel was a final policymaker for the School District is, however, wholly unsustainable. The Amended Complaint indicates that Wessel was hired by the School District, as well as, apparently, the County and the Borough, to conduct a joint audit. Entering a contract with a governmental entity does not vest final policymaking authority in the private company such that it becomes a state actor. Untracht v. Fikri, 454 F.Supp.2d 289, 322 (W.D. Pa. 2006) (citing decisions).

The Amended Complaint includes no factual allegations specific to Wessel's engagement that would permit a plausible inference that Wessel (or its agent Stohon), had unreviewable authority with respect to how to conduct the audit of Tarasovich's records. The Amended Complaint instead directly contradicts the notion that Wessel was vested with this final policymaking authority. According to the Amended Complaint, Stohon was required to consult with individuals associated with the School District, via telephone and in person, on the day of the audit about how to proceed with the audit. (ECF No. 54 ¶¶ 78, 94-100.) By definition, if Wessel was the final policymaker, it, or its agent Stohon, would have unfettered discretion with respect to the execution of the audit. Wessel did not have such "final, unreviewable discretion to

make a decision or take action" and, therefore, could not be the final policymaker. <u>McGreevy</u>, 413 F.3d at 369. Liability cannot be imposed upon Wessel on this basis.

### D. **Failure to Supervise**

Tarasovich contends that liability can be imposed upon the School District because Whitfield and Kocsis failed to supervise Stohon. (ECF No. 54 ¶¶ 226, 234-35; ECF No. 83 at 7-9.) Tarasovich does not seek to impose liability upon Wessel pursuant to a failure to supervise theory in the Amended Complaint. (ECF No. 82 at 6-7.) The court, therefore, considers this theory of municipal liability only in the context of the School District. For the reasons that follow, the court concludes that liability cannot be imposed upon the School District on a failure to supervise theory.

Tarasovich's purported failure to supervise claim is defectively pled. Failure to supervise is a method by which a municipality is held responsible when its own failure to control the conduct of its employees causes a constitutional violation. <u>Taylor v. Mazzone</u>, No. 15-6682, 2016 WL 4272266, at *5 (E.D. Pa. Aug. 12, 2016). Being a vehicle to impose § 1983 liability upon a municipality, it is necessary to plead that the failure to supervise qualifies as an official policy or custom of the municipality, including under the theory that a final policymaker implemented a policy of failing to supervise employees. <u>Id.</u> It is also necessary to plead that the municipality's failure to supervise its employees reflects deliberate indifference to the rights of the citizenry and caused the Constitutional violation. <u>Id.</u>; <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126-27 (3d Cir. 1998). Here, however, Tarasovich does not allege that her Fourth Amendment rights were violated because the School District failed to supervise Whitfield and Kocsis. Tarasovich alleges that Whitfield and Kocsis failed to supervise Stohon, which in turn, caused a violation of her Fourth Amendment rights that should be chargeable to the School

District. (ECF No. 83 at 7-8.)  None of the reasons advanced by Tarasovich to support her novel theory of municipal liability validate the claim.

First, Stohon is not an employee of the School District.  Whitfield and Kocsis are not her supervisors.  The School District has no independent duty to train or supervise Stohon or Wessel, a company that it hired jointly with the County and the Borough. McCullers v. Commw. of Pa., No. 5:15-3732, 2016 WL 3551624, at *6 (E.D. Pa. June 30, 2016) (municipalities have no duty to train and supervise independent contractors).  Wessel and its employee Stohon, were independent auditors hired by the School District to conduct a joint audit of Tarasovich's records.  Pursuant to state law, Wessel was required to conduct that audit in accordance with generally accepted auditing standards, not in accordance with the School District's preferences and policies. 72 P.S. § 5511.26(b)(2).  Under these circumstances, the fact that failure to supervise liability can attach, in some circumstances, if a plaintiff pleads both contemporaneous knowledge of the offending incident and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate is inconsequential. Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 643 (E.D. Pa. 2014).  The Whitfield-Stohon relationship was not a supervisor-subordinate or employer-employee relationship.

Second, Tarasovich identifies no legal authority extending the failure to supervise theory of liability to Constitutional torts committed by individuals who are not employees of the municipality.  Although the court located some non-binding authority for this proposition, in those decisions the plaintiff was required to establish, or plead, a pattern or custom of failing to adequately supervise outside contractors, which pattern or custom resulted in repeated Constitutional violations. Ernst  v. Creek Cty. Pub. Facilities Auth., No. 14-504, 2016 WL

4442803, at \*9 (N.D. Okla. Aug. 22, 2016); <u>Olson v. Sherburne Cty.</u>, No. 07-4757, 2009 WL 3711548, at \*6 (D. Minn. Nov. 3, 2009); <u>Moseke v. Miller and Smith, Inc.</u>, 202 F.Supp.2d 492, 505–06 (E.D. Va. 2002); <u>Andrews v. Camden Cty.</u>, 95 F. Supp.2d 217, 228 (D.N.J. 2000). There are no such allegations in the Amended Complaint about the School District or Whitfield. Tarasovich's vague references, in the Amended Complaint and her supplemental reply brief to the "similar actions" against Kathleen Dunlap are inapposite. (ECF No. 83 at 9.)  Tarasovich pleads no facts indicating that Ms. Dunlap's Fourth Amendment rights were violated during a prior audit. (ECF No. 54 ¶¶ 230-31.)

Third, Tarasovich does not identify the policy or custom of the School District that resulted in the Constitutional violations.  No policy in this regard is identified.  The policy need not be a formal edict.  If Whitfield was a final policymaker for the School District with respect to the manner in which audits were conducted, her failure to supervise Stohon could possibly be a basis for Tarasovich's failure to supervise claim.  The court, however, in section II.C.1. of this opinion, rejected the notion that the Amended Complaint contains sufficient factual allegations to plausibly infer that Whitfield could be deemed a final policymaker.  The Amended Complaint includes no allegations that the School District had a custom of violating citizen's Fourth Amendment rights during audits or of engaging auditors it knew to have engaged in such misconduct. <u>Taylor</u>, 2016 WL 4272266, at \*5; <u>McCullers</u>, 2016 WL 3551624, at \*6.

Tarasovich's failure to supervise claim is contrary to law, and the Amended Complaint is devoid of any factual allegations for it to be deemed a plausible claim.

**III.** **Conclusion**

Tarasovich pled a plausible § 1983 claim, based upon the violation of her Fourth Amendment rights, against Stohon, Whitfield, and Kocsis. Tarasovich, however, failed to plead sufficient facts to support any reasonable inference that the School District or Wessel could be directly liable for these Constitutional violations. The pending motions to dismiss are denied with respect to Count I and granted with respect to Count II.

An appropriate order will be filed contemporaneously with this opinion.


November 9, 2016                                    BY THE COURT:

                                                   /s/ *Joy Flowers Conti*
                                                   Joy Flowers Conti
                                                   Chief U.S. District Judge